Good morning, Your Honors. I'd like to reserve three minutes for rebuttal, if I may. The count is clocking down, so the clock is counting down. Pardon? The clock is going in. This is a simple case rendered complicated by Ebay's assertion of the damages theory that is not articulated by the plaintiffs. Plaintiffs assert, and Ebay agrees, that Ebay has the quality of an online classified ad service. Ebay even says in some of its papers, Ebay is the legal equivalent of a classified advertisement section of a newspaper. Like a classified advertisement section of a newspaper, Ebay sells a listing for a specific duration. But you have an expert that Ebay produced. You didn't even challenge that. You said he examined everything. He gave an expert opinion. He says it's classified, and I think it's not a matter of discipline to explain why. And you could not think at all that you could do that. Your Honor, if I may, the answer to that is there are two trains passing in the night here. There's the expert approach to damages, and there's the mathematical formula approach to damages that is enunciated in the Amari case that we rely upon, in addition to other rateable portion cases that discuss damages. When a party enters into an agreement and they are shorted by one of the contracting parties by 5 percent or 10 percent of the amount that they are entitled to get, the proper measure of damages is that which they were shorted. And in the case of the plaintiffs, they were shorted. No, just a minute, though, which you don't know whether they're shorted. Your theory is a pro rata calculation, right? Yes, Your Honor. I mean, just fairly mechanical computation. And I agree, if that's the sound, the theory, then it probably is a meanable classification. But I think what just Block is getting at is that theory, as far as the price of this case, was countered by eBay's experts. That's not what happened. Because, for instance, you know, I mean, people who get delayed listings, sometimes they get more money. So the pro rata, they're not out of anything. In fact, they may be even better off. So their argument, I'm not saying it's good or bad, but their argument is that the pro rata doesn't apply here. And you didn't submit any evidence to contradict that expert testimony. We did, Your Honor. What was the testimony submitted? The testimony that was submitted, well, first of all, Your Honor, the Prowse declaration, the Prowse testimony recognizes that you could do a pro rata calculation based on the portion of the listing or insertion fee that was paid that was not delivered by eBay. It says that that's a possibility. What it then goes on to say is that that doesn't really matter because what people are really interested in is selling the item for the highest possible price. So under Prowse's theory, if the listing was for one minute of a seven-day period, as long as the item sold for a price that the person was comfortable with, they got all that they bargained for. And that's why we turn to the classified ad analogy, which recognizes that there are two components to the agreement or two components to the relationship. One is a listing or insertion component where you pay a fee, an insertion fee, or a listing of a certain duration. The other is a sales component, and you say you pay a final value fee for the sales component. So even in the relationship that eBay has articulated between the two parties in its contract of adhesion, it recognizes that part of it is a classified advertising type listing that you pay a fee for, and part of it is a final value fee that may go up or down depending on the price of the item sold. The context here is that this is a summary judgment binary. I think the burden is on you when your adversary comes forward with the situation the experts report, and you don't counter that at all. You have the burden of doing something about it. And I take it your position is that you don't have to be concerned about that because it's a matter of law. You defeat the summary judgment motion because it's a matter of law. Our position is that to defeat summary judgment, all we had to do was articulate a measure of damages. I don't know what that is. But that measure of damages has to relate back to the harm that's created by this alleged breach of contract. And it does, Your Honor. It has to relate back. And so that's why you need some evidence to show that this method of calculating damages actually goes back and will compensate for the harm that you've done. And your theory, as I understand this, going pro rata, is that basically every hour is as good as every other hour. For purposes of the listing fee, every hour is as good as every other hour. So for purposes of the insertion fee, which is the analog to the classified ad as discussed in Amari, every hour is as good as every other hour. For purposes of the final value fee, which determines at what price the item sells, that's a different story. We are not focused on damages premised on the final value fee. Scalia. But the expert that your adversary submitted took issue with that. And if I understand correctly, so that's not what his assessment as an expert is all about. It seems to me that if you would have counted with an expert of your own to say that I disagree with that and I have done my own evaluation and I think a pro rata concept of damages is appropriate, we have an issue of fact, maybe, for judicial resolution. But it doesn't seem to say we have that. Your Honor is, I'm sure, used to cases where the facts and underlying theories are far more complicated than this one. This is a very straightforward case. This is the case of someone selling a pallet of bricks and being told there's a hundred bricks in the pallet and paying a fee for that and getting 80 bricks. That's what this is. Your Honor does not need to have an expert tell you or any court that when you're shorted by 20 bricks, you're entitled to the value of those 20 bricks. And I'll give you the evidence that we cited to support this is directly from the plaintiffs. The injuries that they were concerned with dealt with the time, the duration of the listing that they were shorted. Mr. Hubert testified he paid $3.20 for a five-day listing. His listing was shorted by six hours, which represents 5 percent of the listing time, and that's his damages are 5 percent of the $3.20 that he paid for that listing. That's premised on the notion that every hour is as good as every other hour. And the evidence that's in the record, of course, doesn't support that concept. Your Honor, the concept of the time that he was shorted is directly from the plaintiffs. And that's the problem. You needed to, as Judge Block has pointed out several times now, you needed to produce some evidence. You know, summary judgment is one side moves it. Here's our evidence. You have the burden of proof to establish your entitlement to damages. You've got to come back and you've got to show that there's a genuine, triable issue of fact that requires a trial. You know, you go to the Amari case, and there, that case went to trial. There was a lot of evidence produced in that trial. And that's when the jury returned a verdict on the damages. Right, Your Honor. This is different. You're — this is on summary judgment, and you were required to come forward with some evidence to show that, you know, every hour is as good as every other hour. Your Honor, the — Or every minute. The gradation of value associated with hours assumes that the only part of the contract is the part of the contract that connects to the sales price. That is not the classified ad analogy. The classified ad analogy is you pay for a week-long listing, and the listing doesn't show up. But let's say that you pay for a listing that you want to show up on Sunday, and you want it to run from Sunday to Sunday, and the listing doesn't show up until Monday. You did not get two days of that listing. And you can speculate on who didn't or did or didn't see the listing during that time period when it wasn't available. But the bottom line is you did not get two-sevenths of what you paid for. And that is both a breach of the contract, because you contracted for seven days, and it's also an unfair business practice. I'd like to turn briefly to the unfair business practice component of this, because the Court does not need to determine that there was a contract to determine that by eBay shorting people a duration, a listing duration, and not telling them that they were shorting the listing durations, and then by leading them into believing that the listing was immediately searchable once they hit the sell your item button on the form, that is independently an unfair business practice that may be subject to further adjudication in the trial court. I can't remember, but does your class include advertisers or sellers who actually sold their item? It includes some sellers that actually sold their item. How can that be? What's their harm? Their harm is that, well, part of their harm is that they did not get 100 percent of the listing that they paid for. They sold their merchandise. It could be. I'm saying, Your Honor, hypothetically there's some circumstances where, for example, if you sold it subject to a relisting, so you have a listing for one week, you have a relisting, you have a subsequent relisting, eventually the item sells. If you're shorted part of your listing time, then you've still been shorted. You haven't gotten the benefit of your contract. And what, Your Honors, you're focusing on is the contract being solely for the sale of the item, and it does not matter that there's this insertion or listing component. And the policy that would follow from that is that it doesn't matter how long eBay delays a listing. It's a delay for the listing. Is there any evidence in the record that when the item first goes up, that items sell within a certain period of time? It varies from item to item depending on the nature of the item, depending on the time that it's listed. I mean, there must be studies. I mean, in this. There's – there are studies, but it's varied depending on the nature of the item when it starts to be listed. For example, for the class representatives, one of them was selling football jerseys. And he wanted to – he wanted these football jerseys to be viewable and biddable, buyable during specific football games. And one of the reasons this lawsuit was brought is because after the fact, he found out that he thought he was listing his item for a specific football game at a specific time, and hours later, the thing was listed. He wasn't getting what he paid for, which was the visit. You're saying there's no way in which you can really determine damages in the context of this class action litigation, and therefore, as a matter of law, you should be relegated to a pro rata in this case. I'm saying, Your Honor, that the only proper measure of damages is the pro rata, because that's exactly what's at issue. The decreased listing duration is 100 percent of what is at issue in this case and nothing else. And for Mr. Prowse to come in with a damages analysis that says something else is really a smoke and mirrors way of complicating something that is really fundamentally very simple. My pallet of bricks analogy, the classified ad analogy, that's what we're talking about here, not something more complicated than that that's based on when something sells and behavior of the buying population. Do you want to save some time for rebuttal? I do want to save some time for rebuttal, Your Honor. We'll hear from you. Thank you. So let's assume that I give you $100 for an hour listing, and you're only listing for a half hour. The name is? Go ahead and give your ---- before you answer Judge Block's question, why don't you state your appearance. Thank you, Your Honor. Witty Sumvichian for eBay. I have a preliminary question, too. One of the key documents here in the testimony was the declaration of the rights of the Prowse? Correct, Your Honor. And that was filed under seal. Now, is that because you object to anything he said being disclosed in open court? No, I don't think there's a concern here today, Your Honor. I don't think we need to get into the particular details. So the fact that in the argument here, in the opinion we referred to the Prowse affidavit is not of concern to you in any creative way? None of the information we talked about creates a concern, Your Honor. Fine. Thank you very much. Now you have Judge Block's question. Okay, Your Honor. Go ahead. You just interrupted me. So I just, hypothetically, I guess I don't know this world so well, but if I give you $100 for an hour and just give you 15 minutes, I have no recourse. We're not saying that there's no recourse, Your Honor. We're not saying that the recourse would be for the plaintiffs to provide a damage model supported by evidence that would show the value of the time that was lost. What if I have the old notion, I don't think contracts 101, that you go on to court and get remedy? What's the remedy? Again, the remedy would be whatever the plaintiffs could support through a competent damages model supported by evidence. And if they could show a contract in which there was a particular amount assigned to particular increments of performance, if it was $100 for 10 hours and there were separate allocations that showed I don't think they had the burden, if it's possible, to do that right, to do that effectively, to challenge the concept of appropriate damages. Absolutely. It was their burden, Your Honor. I would say it was their burden to come forward with evidence, regardless of whether we came forward with an expert. What if you did not produce an expert at all? The result would be the same, Your Honor. On a motion for summary judgment, the only burden for the moving party as a defendant is to show that there's an absence of evidence in the record. We did that. But we went beyond that, Your Honor. Why an absence? There's a presumption here. I gave you $100 and gave you 15 minutes. I didn't give you 10 hours. I was a panelist. That's sufficient to give you some sort of position to come forward and say that's not the case. That's the law of the circuit, Your Honor. There's no presumption, certainly in a breach-of-contract case, equally applicable in a UCL case, that there is some pro rata formula that can be applied in all cases. Can you reaffirm these people without a remedy? The way they did wrong theoretically, I guess, is essentially they have no remedy in that situation. We're not saying that there's no remedy, Your Honor. We're saying that the remedy would have been for plaintiffs to come forward with a model, Your Honor. Your Honor, we've litigated this case for seven years. Just to give you the context in which this order arose, we litigated the case for seven years. At the time of the ---- If I correct you going forward, if I were to go on eBay and give you $100 for 10 hours and I only got 10 minutes, I have no remedy. Currently, there is no remedy. And let me explain why, Your Honor. Let's put this into context. What we're talking about is a process in which eBay holds items out of search results to protect the eBay community from counterfeit items, from offensive items, from other items. It's fully disclosed. Throughout the class period, it was fully disclosed in multiple places. Now, since 2007, in fact, it's been disclosed right in the listing form. So a seller knows when I list an item, it may not appear immediately in search results because eBay has this policy for the protection of the eBay community. So going forward, certainly anybody listing an item today understands that. That's part of the contract. That never happens, Your Honor. Well, that liability has not been established, right? There hasn't been a trial here, has there? Certainly not, Your Honor. And so the procedural posture is simply a failure of proof with respect to the essential requirement of proving of damages. Well, just a minute. We're even more one step removed. The question is not whether or not there's a remedy. The question really is, is the remedy susceptible to class treatment? Isn't that what it amounts to? You know, no one's saying, you know, you can't go individually to court and ask for $3.05 or whatever it is. The question is, is it amenable to class treatment because there is, you know, a uniform way of measuring damages. Isn't that the question? Not whether there's a remedy, you know. That is the question, Your Honor. And that's the way this pro rata theory developed. It was their sole proposed formula for recovering damages throughout the entirety of the litigation. On behalf of all class members. On behalf of all the classes proposed. At the class certification stage, it was their only proposed model. At that stage, they, again, had no evidence to support that. Judge White gave them the benefit of the doubt, certified the classes on the assurance from counsel that they would, at a later stage in the proceedings, come forward with a methodology and evidence. Not just a formula and saying we have a mathematical formula and we have the inputs and we're going to do a simple arithmetic calculation, but rather that they would have evidence to show that the outputs of the formula actually tied to the alleged harm in the case. That was the entire premise in which class certification was granted. Then, on a decertification motion, we pointed out again that they had no basis for this. They were given the benefit of the doubt again. Then they were given the benefit of an additional period in which EBAE filed a summary judgment motion, explained all of the defects and flaws that we saw in the proposed pro rata formula, came forward with our expert to show that the assumption of equal value, that all hours are worth the same, all minutes are worth the same, is fundamentally flawed. Let me clarify this. You know, we have two concepts here. We have a liability concept. We have a damage concept. It seems here that the decertification is predicated upon the combination of the two, that damages and liability sort of are treated in tandem. You could separate them off. It could be a determination that there's liability, but it's not suitable for damage class action certification. I guess I'm thinking analogously to the tobacco cases, where there have been class action determinations creating liability but requiring each smoker to have a separate damage if they wish to pursue it. It may not be feasible in this case because the damages are so small. But conceptually, there's no liability determination here. The damages are sort of tethered to the liability issue. Should there not be an opportunity on remand for the district court to decide whether there should be class action liability established? And maybe, you know, the plaintiffs will have to go ahead and pursue their own damages. No, Your Honor. The posture of this appeal is an appeal for the grant of summary judgment. If there's no error in that order, then the grant of summary judgment should stand. They had the opportunity. I agree. Conceptually, it's possible to seek certification of particular issues. They could have sought certification of the liability issue, Your Honor. They never did that. They had multiple opportunities to do that. They've never proposed anything other than to proceed on a class-wide basis on the weight of their pro rata formula as the sole measure of recovery. So if they have not come forward with evidence to show that that formula actually measures the harm suffered in this case, they can't proceed, Your Honor. They can't go to a jury with what counsel just said, which is to say simply to the jury, we don't have evidence. We don't have anything to support the assumption that all ours are worth the same. All of the expert evidence points to the contrary. But we want the jury to simply assume that and award damages on that basis. They can't proceed on that basis, Your Honor. Why isn't every error as good as every other error? For multiple reasons. All the evidence points to the contrary. With respect to search exposure, and remember that the whole premise of the plaintiff's case is that the value of a listing is a function of the listing appearing in search results. So by that measure, the end of the listing period is substantially more valuable because eBay's algorithms make listings appear more prominently in search results as they approach the end of the listing. That's undisputed, Your Honor. That's in the Nesloff Declaration. That applies to all listings, fixed price, and auction style. So by their measure of value, the beginning of the listing period has substantially less value than the final hours of the listing period. We also submitted evidence that's undisputed in the record with respect to bidding activity. So if bidding activity or options is a measure of the value of the listing, that's overwhelmingly allocated to the end of the listing period. The evidence shows that actually 98 percent of the bids that the winning bids that the winning bidders have submitted are actually in the last six hours of the listing. That's the period when these search delays can occur, when eBay is scrubbing these listings for potential violations. So what is eBay obligated to do? They don't have anything at all. They can just take your money and get about a bill of damage paid against them. One minute of the entire time, and just hustle through that is how it works out. The way it works out is no obligation at all. That's not what we're saying, Your Honor. But here's the circuits. We don't have to do anything if the plaintiffs can't come forward with competent evidence that allows them to get to a jury. They're not out of luck, Your Honor. They had every opportunity through seven years of litigation to present a model that they could present to a jury. They didn't do that. And the Vernon v. Davis case, I think, is helpful. In that case, even assuming that plaintiffs can prove up a liability case, and even assuming that they can show some entitlement to damages, what this circuit held was the case still has to be dismissed as a matter of law if there is, quote, no competent evidence from which a jury could fairly estimate the damages suffered. That's precisely what we have here, Your Honor. We have — we don't have an adjudication of liability. We dispute that there could be any adjudication of liability in light of eBay's disclosures. But the fact that there's no evidence, Your Honor, on the damages issue doesn't allow them to proceed. We're not — we're not asking for — There could have been a remedy if they came forward with a model to show some supportable basis. We don't know whether it can be done or not because they never tried, Your Honor. That may be, Your Honor. And if they wanted to present evidence on that point, they could have. But that's what — isn't that what the contract is about? I mean, they bargain for one day of the item being up on eBay for one day. It turns out what they bargained for doesn't come to fruition. It's only up there for 18 hours. That doesn't quite hold right. Well, first of all, Your Honor, the expectation of any particular seller depends on whether they saw these disclosures in which eBay explained explicitly that your listing may not appear immediately in search results. And it's in multiple disclosures throughout the website and that were in place throughout the class period. The only way that — What they bargained for then — what they signed up — what you're saying is what they really bargained for is even though they clicked one day, they read all the disclosures. Well, it's not really one day. It may be something less than one day. Is that right? Is that what you're saying? They're totally at risk, right? It's all up to eBay. They'll do whatever they want in this stuff, right? Well, it's not arbitrary, Your Honor. No, but I mean, that's what you're saying, though, is that it may take them one hour of the day to figure out if it's counterfeit goods, or it may take them five minutes. That's right. And so, therefore, it's almost up for a full day. That's what eBay specifically tells sellers. But let's take the harder case. Let's assume, Your Honor, that we can identify a group of sellers who never saw these disclosures and fully expected — as the plaintiffs claimed they expected, that they would get a listing that would be immediately available in search results and would So let's say they can prove that liability case. And let's assume further that one of these listings doesn't appear for some amount of time, and that is contrary to their expectations. But the bottom line is there still has to be evidence to show what the value is that's been lost as a result of that. Well, I guess — I mean, you can have a breach of contract, but there could be no damages. Yes. Right? I guess that's what the response is here, is that, assuming there's a breach, and I know you dispute that, but they still have to prove that they suffered damage. Correct, Your Honor, because of lawlessness. And I guess what you're saying is when you get into the substance of the whole matter, they really can't show that they suffered any harm because, one, either the item was sold, or, two, as you reach the end of the hour, the end of the listing period, that's when they're most likely to sell the item, not at the beginning of it. That's right. Therefore, they really suffered no harm because they lost out on one hour or six hours. We're not even saying that it's impossible for the plaintiffs to show some harm, Your Honor. In that hypothetical you posed, there may be harm, but we don't know because the plaintiffs never came forward with a model. And we certainly don't know that the pro rata method — The model is very simple. I gave you 100 bucks. I wanted it the whole day. I didn't get the whole day. What's the big deal? Yeah, let me — It's a standard breach of contract plaintiff that damages. That's time honored from day one. What's the big deal? Let me be more precise about what I said, Your Honor. It's not that they didn't come up with a model. They did come up with a model. Just like in a lost profits case, I could say we'll measure lost profits as 150 percent of last year's revenues. Or in a consumer case where there's mislabeling, you could come up with a formula that's simply everybody recovers 50 percent of the purchase price. That wouldn't be enough in either of those cases. And what they came up with here fails for the same reason, because there's no link. It's the same as a matter of law. As I understand the petition, this is pro rata. They asked for 10 hours. They put 5 hours. What's the big deal? What's the big deal? It's a matter of law. There's no big deal. The big deal is that their obligation was to come forward with evidence to show that the 5 hours, the pro rata discount actually measures the value. And, Your Honor, let me point you to one more citation. This is the Amari case. I know I'm out of time. In the Amari case, this is the case that the plaintiffs have cited for the notion that a pro rata refund can be applied as a general. That's right. That's right. So what Amari actually says is this. Under the doctrine of partial restitution, a party who pays in full for services and goods only partially received is entitled to recover as damages the difference in value between what was paid and what was actually received. Hinsight there is 12. So Amari doesn't support the notion that a pro rata formula can be applied in every case. What Amari actually says is you can apply a pro rata formula if the evidence shows, based on the facts and circumstances of the particular case, that an equal pro rata refund actually measures, quote, the difference in value. That's the fundamental failure here. There's no evidence on that point, Your Honor. And that's dispositive. Thank you. If you say about that, it talks about the difference in value, right? It talks about the difference in value in connection, Your Honor, with time-honored cases in California that deal with this concept of rateable portion. That is where you are dealing with a measurable quantity and you are shorted that measurable quantity, your injury is that portion that you were shorted measured by, you know, it's a fungible good. It's time. It's bricks. It's fuel. It's something like that that you can measure based on percentages, based on volume, based on something quantitative. So it's not a matter of lost profits, where you might need an expert. It's not a matter of advertising injury, where you might need an expert. It's a matter of taking a measuring cup out and pouring that bit of it out of the measuring cup and determining what that bit is worth. That's essentially what we're saying. And the Amari case is not standing by itself in the context of rateable portion. It's standing on the shoulders of a variety of cases in California. That deal with this very simple issue. And I think that all of us do not embrace the rateable prorated concept of damages. There are cases in a different factual context. If you're dealing with something that needs to be determined through expert testimony like lost profits, then a prorated portion is not appropriate. When you're dealing with something that can be measured very easily, rateable portion is the proper and possibly the only measure of damages, the best measure of damages. And, Your Honor, I'd like to draw your attention back to Mr. Hubert's testimony, because all the Court needs to do is determine that the math contained in Mr. Hubert's testimony, where he was shorted 5 percent of the listing duration, is exactly what he was shorted as connected to the listing or insertion fee that he paid. That is the amount that he was injured, that 5 percent. And it is easily translatable to every other listing. Every other listing that was shorted can be measured against the time period that it was shorted and, you know, determined by the listing fee. So if you pay $1 and you're shorted 10 percent, your damage is 10 cents. If you pay $10 and you're shorted 50 percent, your damage is $5. It essentially is one size fits all because eBay has the data. So the data, the damage model can be applied across the data eBay provided. So eBay provided an agreed-upon data set. And I won't go into the details of the agreed-upon data set, but this damages model that just applying Mr. Hubert's evidence and the case law in Amari and the rateable portion cases to the damages model provided by eBay gets you to a measure of damages that may be applied entirely across the entire class of people connected to their listing or insertion fees. Did you ever argue in district court something akin to a restitution theory? Yes. I think that's what you're putting forth. In other words, you know, we paid X dollars and we want a restitution of a certain percentage of what we paid or something like that. Yes, we did, Your Honor. And we argued it in two different ways. One as a possible way of measuring damages for the breach of contract, but more importantly in the restitution concept applies directly to the unfair competition law claim where this rateable portion, this pro rata analysis is exactly the type of remedy, the type of relief that is contemplated under a UCL claim. Would the district court say anything about that theory? The district court essentially lumped them together and did not really give special attention to the different standards that are applicable to a UCL claim. And we ask that this panel particularly focus on that, because I think what Judge Sotomayor said in the motion that this is essentially an unfair competition, unfair business practice where eBay can give some pay, take money for a listing, a one-day listing, give 12 hours of listing time, and still keep the money. Even if you have a restitution theory, you don't have to focus on the value, the harm. Pro rata, they lost 50 percent of what they paid for the listing fee. They should get half of their listing fee, restitution of half of the listing  Breyer. What you're saying is it cannot be an economic business model in this particular situation. All the experts at eBay debunk the fact that, you know, you can't show any advantages of APD, but you never can do that. There is no model. You're relegated to the only model you look at would be the pro rata. I think there's nothing else you can do. Your Honor, we did not articulate the pro rata theory as a response to the fact that in response to Mr. Prowse's declaration, we articulated it in our case from day one, and the reason is because it's the actual damages that were experienced by our clients, or actual damages experienced by the class, or the restitution to which they're entitled. You just didn't get your 24 hours. You just didn't get your 24 hours. If any of the 15. Yeah. If I rented a hotel room for you. But you still sold the app. Well, that person may not have suffered damage, but the person who did an app. The people who sold should not be part of the class. They did not suffer. That's a separate issue. There are some circumstances when people who sold would be and some when they wouldn't, and you'd have to go on a listing-by-listing basis to determine that. But, Your Honor, if I rent a hotel room for 24 hours and they boot me out after 18 hours, I didn't get what I paid for. I'd like some of my money back, and that is essentially what this case is about. It depends on who boots you out. Thank you, Your Honor. Okay. Thank you. The matter is submitted. We thank you, Counsel. That ends our case for today and our session. We're done.
judges: Block, Tashima, Paez